```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


Joanie D. Gildow,               :

        Plaintiff,              :

        v.                      :      Case No.  2:15-cv-2558

Carolyn W. Colvin, Acting       :      JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,       Magistrate Judge Kemp

        Defendant.              :
```

              REPORT AND RECOMMENDATION

                    I.   Introduction

Plaintiff, Joanie D. Gildow, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for social security disability benefits and supplemental security income. Those applications were filed on May 12, 2011, and alleged that Plaintiff became disabled on February 12, 2011.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on October 4, 2013. In a decision dated January 23, 2014, the ALJ issued a decision denying benefits. That became the Commissioner's final decision on May 7, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on September 11, 2015. Plaintiff filed her statement of specific errors on October 14, 2015, to which the Commissioner responded on December 14, 2015. Plaintiff filed a reply brief on December 31, 2015, and the case is now ready to decide.

        II.  The Lay Testimony at the Administrative Hearing

Plaintiff, who was 34 years old at the time of the administrative hearing and who has a ninth grade education,

testified as follows.  Her testimony appears at pages 112-31 of the administrative record.

Plaintiff first testified that she could not recall what job she held in 1998 and 1999, but she worked as a grill cook at McDonald's in 2002.  She had also been a bartender and a group home manager.  In that job, although she supervised others, she also worked along with them doing household cleaning tasks.

At the time of the hearing, Plaintiff weighed 367 pounds.  That was down from her weight in 2011 when she weighed 410 pounds.  Her weight affected her breathing and produced social anxiety.  She had been using oxygen since 2011, and became panicked without it.  It took her all day to do simple things like cleaning her house because she had to rest frequently.  Even with oxygen, exertion left her dizzy and short of breath.  She used an inhaler and a nebulizer on a daily basis.

When asked about her physical abilities, Plaintiff said that she could stand for less than ten minutes, had to stop several times when trying to walk 100 yards, and relied on her sister to do grocery shopping.  She was taking medication for bipolar disorder and had suicidal thoughts.  She experienced frequent crying spells as well, and had blurred vision from her medications.  She lived alone and took care of two dogs and a cat.  She was able to let the dogs out, but not to walk them on a leash.  She had gone fishing once during the past summer and would play board games with visitors who came to her home.

### III.  The Medical Records

The medical records in this case are found beginning on page 371 of the administrative record.  The pertinent records - those relating to Plaintiff's need to use supplemental oxygen - can be summarized as follows.

Plaintiff was admitted to Selby General Hospital on April 9, 2011, with diagnoses of respiratory insufficiency and bronchitis.

Her discharge diagnoses included chronic obstructive pulmonary disease and morbid obesity. Based on oxygen saturation tests, she qualified for home oxygen, and she was to remain on oxygen therapy on a continuous basis. Her bronchitis was also treated and she was prescribed inhalers. She was encouraged to stop smoking. (Tr. 373-82). She subsequently was given a certificate of medical necessity for oxygen which indicated that she would need it for her lifetime. (Tr. 865).

A number of months later, Plaintiff underwent a pulmonary function study which showed moderate obstructive pulmonary disease with moderate improvement with bronchodilators. (Tr. 383-85). A mental health treatment note from September, 2011, reported that Plaintiff used oxygen continually during the night and "not so consistently" during the daytime. (Tr. 402). However, she told the consultative psychological examiner in November, 2011, that she was "oxygen-bottle dependent." (Tr. 443).

Dr. Mella from the Marietta Memorial Hospital Pulmonary Department, who saw Plaintiff for sleep apnea, reported in a treatment note dated May 22, 2012, that Plaintiff was suffering from "mild chronic obstructive pulmonary disease." He noted that during a six-minute walk her oxygen saturation dropped to 89% but that was "probably not enough to meet Medicare criteria for home oxygen." She also reported poor compliance with use of her CPAP machine and she continued to smoke. Dr. Mella thought some of her low oxygen level was due to sleep apnea. (Tr. 729-31). At a prior visit, her oxygen saturation was 95%. (Tr. 733-34).

Plaintiff was seen in the Selby General Hospital emergency room on January 7, 2013, complaining of increased shortness of breath and coughing. She reported using oxygen at home. At that point, her weight was down to 350 pounds. She was diagnosed with acute respiratory insufficiency. Notes indicate she was on

-3-

oxygen for home use and had been for some time and that she experienced desaturation with minimal exertion. (Tr. 566-78).

On January 7, 2014, Plaintiff was seen by Dr. Lee based on her low oxygen levels and her report that she had not felt well for four years. She told Dr. Lee she had not used her CPAP machine in the past year because her "dog ate it." She also said that she experienced restless sleep and awoke unrefreshed and groggy. Her oxygen saturation at that visit was 91%. Dr. Lee prescribed a number of medications and advised her to quit smoking and use an e-cigarette. (Tr. 912-15). He also administered a six-minute walk/oximetry assessment and reported that Plaintiff's oxygen saturation dropped to 89.1% after she walked six minutes at a moderate pace. (Tr. 926).

In addition to notes from treating or examining sources, state agency physicians reviewed the record and expressed opinions as to Plaintiff's functional capacity. In a report dated August 16, 2011, Dr. Cruz concluded that Plaintiff could do a limited range of light work, with the ability to stand or walk for only two hours during the workday, and that she had a number of postural and environmental limitations. (Tr. 150-52). On April 4, 2012, Dr. McKee concurred. Neither had the benefit of the results from either of the six-minute studies.

### IV. The Vocational Testimony

Patricia Posey was called to testify as a vocational expert. Her testimony begins at page 132 of the administrative record.

Ms. Posey described Plaintiff's past employment as a bartender, which is a light and semi-skilled position; as a cashier, which is a light, unskilled job; as a grill cook, which is light and semi-skilled; and as a group home worker or domestic services companion, which is also light and semi-skilled, although Plaintiff did some tasks at the medium exertional level. Finally, her job as a fast food sandwich maker was light and

-4-

semi-skilled.

Ms. Posey was then given a hypothetical question which asked her to identify any jobs which could be done by someone who could lift and carry at the light exertional level but walk or stand for only two hours during the work day and sit for six. The person could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds, could occasionally balance, stoop, and kneel, and never crouch or crawl. The person also had to avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation, and all exposure to unprotected heights and dangerous machinery. From a psychological standpoint, the person was limited to understanding, remembering, and carrying out two-step commands involving simple instructions and simple and repetitive work and could have only superficial interaction with the general public. Ms. Posey responded that such a person could not do any of Plaintiff's past work. However, he or she could work as an assembler, folder, and food sorter, all of which were sedentary jobs. The need to use portable oxygen as needed during the work day would preclude someone from performing these jobs, however, as would being off task for more than 15% of the time.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 82-95 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her onset date of February 12, 2011. Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including chronic obstructive

pulmonary disease, sleep apnea, obesity, major depressive disorder, generalized anxiety disorder, and cannabis use. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform light work except that she could walk or stand for only two hours during the work day and sit for six. She could occasionally balance, stoop, and kneel and climb ramps and stairs but could never crouch or crawl or climb ladders, ropes or scaffolds. She also had to avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation, and all exposure to unprotected heights and dangerous machinery. Finally, she could understand, remember, and carry out a two-step command involving instructions that are simple and repetitive in nature and could have only superficial interaction with others. With these restrictions, the ALJ concluded that Plaintiff could not perform her past relevant work. However, the ALJ found that Plaintiff could perform the three sedentary jobs identified by Ms. Posey. Consequently, the ALJ determined that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises a single issue: that the ALJ improperly rejected the opinion of Plaintiff's treating physician that she needed to use oxygen on a supplemental basis, and then by failing to incorporate that restriction into the residual functional capacity finding. This issue is evaluated under the following legal standard.

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial

evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir.

1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

  Plaintiff, after extensively discussing the law relating to opinions from treating sources, does not actually identify a treating source opinion which says, in so many words, that Plaintiff required supplemental oxygen on a continuous basis. Rather, the Statement of Errors suggests that the ALJ did not provide a proper basis for reaching the opposite conclusion, and that the ALJ substituted a lay evaluation of the medical evidence for one based on medical training. Plaintiff points out that, after she got the 2011 oxygen prescription, no physician ever said she did *not* need oxygen on a continuous basis. She repeats, in the reply brief, her assertion that the record simply does not support the ALJ's conclusion that the medical evidence did not corroborate the need for continuous oxygen. The Commissioner, in response, argues that various records, including Dr. Mella's treatment notes from 2012 and the lack of any mention of supplemental oxygen use in other treatment notes dated from 2012 and 2013, fully support the ALJ's reasoning.

  The ALJ did not treat this issue as involving an opinion from a treating source, and the Court agrees with this approach. The real question is whether the record supplies enough evidence

so that a reasonable person could conclude, as the ALJ did, that Plaintiff did not have a medical need to use supplemental oxygen during the workday - a restriction which, according to the testimony of Ms. Posey, is inconsistent with sustaining employment.

Here are the various items of evidence the ALJ cited to. She pointed out that Dr. Mella's notes indicate Plaintiff was not using oxygen during the day. Also, none of the extensive treatment notes from Dr. Murray (who treated Plaintiff primarily for other conditions than her asthma or COPD) mentioned oxygen use. Next, Plaintiff was not using oxygen when she underwent pulmonary function testing in August, 2011, which was four months after she got her prescription for home oxygen. Finally, the ALJ interpreted Dr. Mella's note about the 6-minute test's not demonstrating Medicare eligibility for home oxygen to mean that a prescription for oxygen was not required. She also commented that Plaintiff's inconsistent use of her CPAP machine and her continuing to smoke cast some doubt on her testimony about the need for oxygen. The ALJ gave great weight to the state agency physicians' opinions about Plaintiff's residual functional capacity, which did not include the need for supplemental oxygen.

The Court finds that a reasonable person, when viewing all of the evidence on this issue, could reach the same conclusion as the ALJ did. The oxygen prescription was issued following a four-day hospital stay for bronchitis and an acute exacerbation of Plaintiff's asthma. It was not accompanied by any medical opinion that Plaintiff required supplemental oxygen on a continuous basis. There are many indications in the record, as the ALJ pointed out and as the Court's summary of the medical records shows, that Plaintiff did not use supplemental oxygen during the day. While Dr. Mella's note about Medicare does not necessarily indicate that Plaintiff did not need oxygen, it also provides some support for the inference that her need for oxygen

was not as serious as she claimed.  Dr. Mella suspected that Plaintiff's oxygen saturation level was related to her sleep apnea, yet she was both poorly compliant with that treatment when he saw her in 2012, and in 2014 she said she had not used it in a year.  At best, the record provides some support for Plaintiff's view, but it also supports the opposite conclusion.  When that is so, this Court is unable to overturn the ALJ's decision.  As the Court observed in <u>Serban v. Comm'r of Social Security</u>, 2015 WL 5965393, *6 (S.D. Ohio Oct. 13, 2015), <u>adopted and affirmed</u> 2015 WL 8767239 (S.D. Ohio Dec. 15, 2015), "it is not this Court's function to substitute its reasoning for that of the ALJ when the ALJ's decision has substantial support in the record."  Since that accurately describes this case, the ALJ's decision should be affirmed.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to

-10-

object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>          <br>
United States Magistrate Judge